```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        JACKSONVILLE DIVISION
```

JOE L. PARSONS,

       Plaintiff,

vs.                                      Case No. 3:06-cv-679-J-HTS

MICHAEL J. ASTRUE,
Commissioner of Social
Security,[1]

       Defendant.

_____

### OPINION AND ORDER[2]

### I. Status

Joe L. Parsons is appealing the Social Security Administration's denial of his claim for Disability Insurance Benefits. His alleged inability to work is based on "2 lower back surgeries, neuropathy [and] swelling [of] both legs[.]" Transcript of Administrative Proceedings (Tr.) at 71. Plaintiff was found not disabled by Administrative Law Judge (ALJ) John D.

---

[1] Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue, Commissioner of Social Security, is substituted as Defendant herein.

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #13).

Thompson, Jr. in a Decision entered on January 17, 2006. *Id.* at 13, 21-23. Mr. Parsons has exhausted the available administrative remedies and the case is properly before the Court.

Plaintiff indicates he is raising two issues. He inquires as to "[w]hether or not the ALJ substantially evaluated [his] Residual Functional Capacity." Memorandum in Support of Plaintiff's Position (Doc. #18; Memorandum) at 1, 5. Additionally, he asks the Court to consider "[w]hether the ALJ's evaluation of the treating medical evidence is erroneous and not closely linked to the substantial evidence of record[.]" *Id.* at 1, 10 (internal quotation marks omitted).

## II.  Legal Standard

This Court reviews the Commissioner's final decision as to disability[3] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if . . . supported by 'substantial evidence[.]'" *Doughty v. Apfel*, 245

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy.  *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).  Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).  Despite the existence of support in the record, the ALJ's determination may not be insulated from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached.  *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III.  Discussion

**A.  Residual Functional Capacity (RFC)**

Claimant challenges the ALJ's RFC analysis in various ways. For clarity, his contentions will be addressed under separate subheadings.

**1.  Misreading of Evidence from Dr. Pham**

"[P]laintiff objects to the ALJ's mis-reading of the evidence from the office of Bao T. Pham, D.O., the plaintiff's primary treating pain physician[.]" Memorandum at 5.  He argues the judge "failed to appreciate and respect Dr. Pham['s] opinion as to [his] functional capacity by mis-interpreting Dr. Pham's opinion to hold that [he] could perform light work activities

which allow an employee to alternate positions[.]" *Id.* at 5-6 (footnote omitted); *see also id.* at 8.

The ALJ "grant[ed] significant weight" to Dr. Pham's opinon "that the claimant could do 'permanent light duty' work[.]" Tr. at 16. He ultimately determined Claimant had the exertional capacity to "lift and/or carry 20 pounds occasionally and 10 pounds or less more frequently. He can stand and/or walk a total of four hours out of eight hours and sit a total of four hours[.] He has to alternate standing/walking and sitting in 30 to 60 minute intervals." *Id.* at 19.

Yet, Dr. Pham obviously understood the term "light duty" to refer to something far different from light work as defined by the Social Security Administration. The Physical Capacities Evaluation (PCE) on which he invokes the label, dated January 13, 2005, contains his opinion Plaintiff cannot sit, stand, or walk for even half an hour in an eight hour workday, and is only able to lift up to five pounds occasionally, never lifting more than that weight. *Id.* at 464. In a handwritten note (Reply Note) jotted on a letter from Claimant's prior attorney asking for more information, Dr. Pham later repeated his use of "light duty," but added that Plaintiff needed frequent rest breaks "and [was also subject to the] above restriction[,]" presumably a reference to the opinions expressed on the PCE. *Id.* at 510.

- 4 -

Indeed, the Commissioner concedes "[i]t is unclear what Dr. Pham meant by the term 'permanent light duty[.]'" Memorandum in Support of the Commissioner's Decision (Doc. #22) at 12.

In a related vein, Plaintiff mentions the ALJ's supposed rejection of "[Dr.] Pham's opinion as to the need for frequent breaks and rest[.]" Memorandum at 8. Still, the issue again seems to revolve around interpretation, not rejection. Mr. Parsons contends the judge "mis-interpreted Dr. Pham's hand written post-hearing statement which was offered as a clarification concerning the notion that [work] capacity . . . was eroded by the need for frequent breaks and rest as described in his January 13, 2005 opinion[.]" *Id.*

The ALJ cited post-hearing evidence from Dr. Pham as embodying a "clear statement that the claimant could do light work as defined in the regulations (Exhibit 25F)." Tr. at 19. As discussed, the ALJ was unjustified in his interpretation of the physician's evaluation. However, as for the judge's treatment of post-hearing evidence, it is noted that his above-quoted statement purportedly relies not on the handwritten paragraph referenced by Plaintiff, but upon a 25-page composite exhibit containing documents from both Drs. Bao T. Pham and Robert E. Groble. The Court has perused these records and fails to see the clear statement identified by the ALJ. Even if the

- 5 -

judge meant to cite Exhibit 24F, the Reply Note, his failure to account for that document's expressed need for frequent rest breaks (and its reference to further restrictions) is troubling.

In light of the ALJ's handling of the evidence from Dr. Pham, this case will be remanded for reconsideration of that information.

**2.   Reliance on May 2002 Evaluation**

Mr. Parsons contends that, "while the May 2002 functional capacity evaluation [(FCE)] did reference an eroded sedentary capacity, it did not ascribe any type of light work capacity[.]" Memorandum at 7 (footnote omitted).  Moreover, he asserts "the ALJ's rejection of . . . lifting and pushing/pulling limitations was inconsistent with the 2002 FCE which indicates that the plaintiff's use of a cane would have restricted essential light activities[.]"  *Id.*

The evaluation at issue is from Brian Imler, a nonphysician examiner.  *See* Tr. at 408-20.  In his Decision, the judge relied in part on the FCE to reject "nonexertional limitations" found by Dr. Pham.  *Id.* at 16.  He explained the "limitations of fine and gross manipulation or pushing/pulling, as well as complete inabilities to bend, squat, crawl, climb, or reach . . . are inconsistent with the claimant's abilities demonstrated by the" FCE.  *Id.*  The ALJ determined Mr. Parsons could "occasionally

bend, stoop, crouch, crawl, kneel and climb [although h]e should not do any squatting." *Id.* at 19.

According to the FCE, Plaintiff could frequently perform fingering activities, as well as reaching with his left hand. *See id.* at 408. Handling and reaching with the right hand were limited to occasional. *See id.* Claimant was unable to "safely attempt" several tests, including stooping, crouching, kneeling, pushing, and pulling. *Id.* Additionally, it was "indicated that his job functions should not require him to squat or lift below knuckle height and he should be allowed frequent position changes[.]" *Id.* Finally, Mr. Imler noted Claimant "requires a cane to ambulate safely, thus restricting any lifting activities." *Id.* Mr. Parsons was thought able to undertake sedentary work so long as the duties were "consistent with the above-defined capabilities." *Id.*

As can be seen by the above excerpts, the FCE is actually not inconsistent with an inability to bend. It also arguably supports manipulative and pushing/pulling limitations and paints a picture not entirely supportive of the judges ultimate findings. The ALJ's assertions to the contrary undermine his RFC analysis. On remand, he should reexamine the FCE.

### 3. Reliance on Consultative Examiner

Plaintiff argues "the findings of the consultative examiner, Thao X. Le, M.D., suggest that while [he] might have been able to lift '20 pounds with both hands', his poor physical and mental condition contributed to his difficulty with getting out of the examining room chair and his inability to" perform "'the graded stress test[.]'"  Memorandum at 7.

As with the FCE, the judge used Dr. Le's report as evidence against the presence of primarily *nonexertional* limitations. *See* Tr. at 16.  Therefore, Claimant's assertions concerning lifting abilities or other exertional activities are misplaced.

### 4. Analysis of Daily Living Activities

The third and final factor presented by the ALJ in his rejection of the nonexertional limitations identified by Dr. Pham was "claimant's reported activities of daily living." *Id*. As regards these activities, which "referenc[e] the need for daily living assistance[,]" Plaintiff insists they "are certainly consistent with his hearing testimony describing an incapacity to sustain work related activities (i.e., sitting, standing, walking, lifting, carrying, pushing and pulling) on an independent and sustained basis[.]"  Memorandum at 7 (citing multiple transcript pages).

- 8 -

As mentioned, the part of the judge's rationale being attacked is focused primarily on nonexertional limitations. Of the capacities targeted by Mr. Parsons, only pushing/pulling (an exertional impairment) is listed by the ALJ in the challenged passage as being contradicted by daily living activities. *See* Tr. at 16. Since the transcript documents relied upon by Plaintiff in regard to daily activities fail to reflect any specific pushing/pulling restrictions, this issue will not be deemed to reveal an independent ground for remand.

### 5. Maximum Ability Versus Capacity for Sustained Activity

"[T]he ALJ was profoundly wrong[,]" argues Claimant, "as the . . . rationale fail[s] to substantially incorporate the governing regulations which distinguish between a claimant's maximum ability versus his or her capacity to sustain said activities on a regular and continuing basis." Memorandum at 9 (internal quotation marks omitted).

The judge clearly appreciated the need for considering whether Plaintiff could sustain work activities on a regular and continuing basis. In describing a medical opinion, for instance, he noted its application to the ability to "work on a continuous eight-hour basis[.]" Tr. at 16. Further, the ALJ's rejection of disabling pain involved a determination as to whether symptoms "would result in an inability to function

effectively on a sustained basis." *Id.* at 17. Likewise, his RFC findings are phrased in terms of the capacity "to perform . . . work activity on a sustained basis." *Id.* at 18; *see also id.* at 19 (referring to "the ability to perform simple job tasks on a sustained basis"), 22 (Finding 6) (similar). To the extent it is being suggested the ALJ failed to recognize the applicable standard, the suggestion is rejected.

### B. Treating Physician

Mr. Parsons contends the ALJ erroneously rejected evidence from two treating physicians, Drs. Pham and Groble. *See* Memorandum at 10-11. "[T]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Phillips*, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

"The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 583; *see Phillips*, 357 F.3d at 1240-41. However, the ALJ may not simply substitute his judgment for that of a medical expert. *See Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (per curiam). "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, . . . as a matter of law . . . he has accepted it as true." *MacGregor*, 786 F.2d at 1053.

### 1. Dr. Pham

Plaintiff complains the ALJ erroneously rejected "the treating physician's opinion as to [his] nonexertional limitations[.]" Memorandum at 9 (internal quotation marks omitted). He maintains the opinion is "substantiated in other parts of the record." *Id.*

In dismissing "the multiple nonexertional limitations listed by Dr. Pham[,]" the judge declared, without elaboration, that "[t]here are no objective medical findings to support [them]." Tr. at 16.[4] According to Claimant, "Dr. Pham's opinion relative to [his] manipulation, pushing, pulling and reaching limitations is supported by the physician's clinical

---

[4] The other set of reasons offered by the judge for refusing to accept the limitations is discussed in this Opinion and Order in the context of Plaintiff's RFC argument.

- 11 -

observations at transcript pages 212-214 along with an association relative to the diagnosis of Chronic Pain Syndrome." Memorandum at 9. Additionally, he claims "[p]roblems with bending, squatting, crawling and climbing are verified at transcript page 412 and in the clinical descriptions of falling in the treating notes[.]" *Id.*

A note from December 23, 2002, from Dr. Pham reports that examination revealed, *inter alia*, thoracic spasm, lumbar inflammation, and decreased range of motion both in the thoracic and lumbar regions. Tr. at 213. Page 412 of the transcript is part of the FCE, and the difficulties posed by the ALJ's handling of that evidence have already been addressed.

In light of the insufficiency of the reasons given by the ALJ for rejecting Dr. Pham's opinion as to nonexertional limitations, the judge will be asked to reevaluate it and, if it is not to be fully accepted, to provide specific reasons supported by substantial evidence. In reconsidering the physician's opinion, he should also afford attention to whether the doctor's records illustrate only "mild exacerbations of the claimant's low back pain[.]" *Id.* at 18; *cf.* Memorandum at 17-24 (taking issue with the phrase and summarizing voluminous records from Dr. Pham bearing upon pain).

**2.   Dr. Groble**

**a.   Inconsistency of Opinions**

The judge refused to "accept the opinion of Dr. Groble in Exhibit 22F which included marked and severe limitations," due to his belief the more recent findings are "completely inconsistent with his prior opinion that the claimant was only mildly impacted psychiatrically and he could not assign any limitations."  Tr. at 16.  Plaintiff balks at this characterization, asserting that in the earlier "record, Dr. Groble never wrote or said anything consistent with the ALJ's perception that Mr. Parson[]s was 'only mildly impacted psychiatrically'."  Memorandum at 11.

On February 19, 2003, Dr. Groble wrote that Plaintiff "appears to have progressively stabilized psychiatrically[.]"  Tr. at 163.  He was expected to reach maximum medical improvement within a few months, and "would be considered . . . to be 10% incapacitated by his psychiatric impairment . . . based on the increased feelings of depression, anxiety and panic."  *Id.*  However, the physician determined "[n]o specific psychiatric restrictions can be assigned."  *Id.*

Inasmuch as the doctor's February 2003 assignment of a 10% incapacitation rating and no specific restrictions was apparently given in the context of a worker's compensation

claim, the relationship of his statements to social security disability concepts is tenuous. To conclude Dr. Groble thereby rendered an "opinion that the claimant was only mildly impacted psychiatrically[,]" *id.* at 16, ventures beyond what the Court can comfortably endorse.

Inadvertently citing Exhibits 19F and 25F, the ALJ bolstered his rejection of Dr. Groble's opinions by writing that, "as previously noted, Dr. Solloway determined there was no psychiatric impediment for work[.]" *Id.* In the Decision's previous paragraph, the judge correctly referenced Exhibit 17F when describing the evidence from Dr. Michael L. Solloway. *See id.*

Mr. Parsons asserts that Dr. Solloway's notes "are only relative to February 4, 2002 through June 6, 2002, [and do] not substantiate the ALJ's conclusion as to 'no psychiatric impairment[.]'" Memorandum at 14. On this score, Plaintiff has a valid complaint.[5] How the judge extracted a "determin[ation] there was no psychiatric impediment for work[,]" Tr. at 16, from a brief letter stating Mr. Parsons appeared, as of June 2002, "to be doing fairly well insofar as his panic attacks are

---

[5] Claimant's suggestion that, "[p]erhaps, the ALJ's portrayal of Dr. Solloway's alleged position . . . is more deeply rooted in suggestions put forth by" another doctor, *see id.* at 14 n.16, though, is too speculative to require discussion.

concerned[,]" *id.* at 16, 422,[6] is not manifest.  The letter is explicitly limited to a single aspect of psychiatric symptomology.  Still, due to the potential merit of some of the reasoning offered for rejecting Dr. Groble's opinions,[7] the ALJ will be afforded another opportunity to evaluate the evidence from this physician.[8]

   **b.   February 2005 Letter**

Aside from rejecting the opinions expressed by Dr. Groble contained in what was received as Exhibit 22F, the ALJ "likewise [found] the letter from Dr. Groble dated February 21, 2005 contained as part of Exhibit 23F . . . entitled to no probative weight."  *Id.* at 17.  Although, on remand, the judge should review all the evidence from Dr. Groble, Plaintiff's argument in regard to the analysis of this letter will now be addressed.

---

   [6]   Dr. Solloway added that he believed the attacks were fully in remission.  *Id.*

   [7]   The judge stated "there is little to substantiate" more than mild psychiatric limitations in Dr. Groble's "more recent clinical notes[.]"  *Id.* at 16.  Plaintiff's description of various records intended to refute the point, *see* Memorandum at 12-13, arguably does little to undermine the ALJ's observation.

   [8]   One reason given by the ALJ for his unwillingness to accept Dr. Groble's opinions was that the doctor "merely noted the claimant's complaints[,] prescribed medications and encouraged him to increase his activities of daily living."  *Id.* at 16.  He pointed to the lack of prescribed testing or counseling, and to the fact "the claimant required no emergent crisis-type intervention."  *Id.*
      Whereas Claimant charges "that it was improper for the ALJ to challenge the accepted note taking procedure which was utilized[,]" Memorandum at 13; *see also id.* at 15, the thrust of the judge's reasoning here is not concerned so much with note taking procedure as with the substance of the information conveyed.  To the extent there was a dearth of testing, counseling, or clinical observation, the ALJ was entitled to mention it.

Claimant alleges he "was . . . prejudiced by the ALJ's misleading suggestion [implying] that since Dr. Groble had not 'seen the claimant in the last six months', the record lacked substantial support for the continuing existence of a mental health impairment[.]" Memorandum at 15. He goes so far as to proclaim the "analysis by the ALJ is tantamount to a denial of due process." *Id.* at 16.

In explaining he was according no weight to the letter, the judge remarked, in part, "it is notable that Dr. Groble has not seen the claimant in at least six months (his last appointment was in June of 2005)[.]" Tr. at 17. The administrative hearing took place on February 1, 2005. *Id.* at 541. In August 2005, Claimant sent for the ALJ's consideration records from Dr. Groble spanning February 2005 through June 2005. *See id.* at 511. In that there is no indication the record was being held open indefinitely for the submission of ongoing treatment records—and given that such delay would represent a very odd practice—the ALJ was unjustified in making anything of Plaintiff's failure to tender still more evidence from any particular source. On remand, the judge should be careful to avoid such pitfalls.

**C.  Severe Impairment**

Finally, it is argued the ALJ erred by omitting two conditions as severe impairments.  Plaintiff claims that, while the Decision "refers to [his] 'severe' impairments as involving post surgical back pain, depression and anxiety . . ., the ALJ failed to recognize and acknowledge the diagnos[e]s of Chronic Pain Syndrome and arterial occlusive disease of the right leg as being 'severe[.]'"  Memorandum at 17 n.23.

"A severe impairment is one that is more than 'a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.'" *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam) (quoting 20 C.F.R. § 416.924(c)).  "An impairment or combination of impairments is not severe if it does not significantly limit [the] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).

"At the second step . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities."  Social Security Ruling 85-28.

The regulations provide:

> (b) *Basic Work Activities*.  When we talk about basic work activities, we mean the abilities and

>  aptitudes necessary to do most jobs.  Examples of these include–
>      (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>      (2) Capacities for seeing, hearing, and speaking;
>      (3) Understanding, carrying out, and remembering simple instructions;
>      (4) Use of judgment;
>      (5) Responding appropriately to supervision, co-workers and usual work situations; and
>      (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

The step two burden of proof is a threshold inquiry described as minimal. *See, e.g., Bridges v. Bowen,* 815 F.2d 622 (11th Cir. 1987) (per curiam); *Brady v. Heckler,* 724 F.2d 914 (11th Cir. 1984) (per curiam). The claimant's burden at this stage has been defined as follows: "'[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Bridges*, 815 F.2d at 625 (quoting *Brady*, 724 F.2d at 920) (alteration in original); *see also Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002).

Here, the judge found "the claimant has a history of lumbar spine surgery due to degenerative disc disease at L5-S1 and a history of depression and anxiety, impairments that are 'severe' within the meaning of the Regulations[.]" Tr. at 17; *see also*

*id.* at 21 (Finding 3).  The ALJ then proceeded to step three of the sequential analysis.

At step two an individual must merely "prove that []he has a severe impairment or combination of impairments." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  This "is all that is required at step two." *Council v. Comm'r of Soc. Sec.*, 127 F. App'x 473, No. 04-13128, slip op. at 4 (11th Cir. 2004) (Table) (per curiam).  Since the ALJ proceeded to step three of the sequential analysis, he will not be faulted for omitting certain conditions at the second step.[9]

### IV. Conclusion

In accordance with the foregoing, it is hereby **ORDERED:**

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision with instructions to 1) reconsider the evidence and opinions from Dr. Pham; 2) reassess the May 2002 functional capacity evaluation in relation to Plaintiff's RFC;

---

[9] Plaintiff's argument as to these alleged impairments would have been more appropriately focused on the evaluation of his residual functional capacity. However, he does not explain what functional limitations, if any, are associated with the conditions.  Instead, he focuses on diagnoses, and a "mere diagnosis . . . says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam); *see also Scull v. Apfel*, 221 F.3d 1352, 2000 WL 1028250, at *1 (10th Cir. 2000) (Table) ("[D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition[.]").

3) reevaluate the evidence and opinions from Dr. Groble; and 4) conduct any other proceedings deemed appropriate.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of August, 2007.

```
                          /s/      Howard T. Snyder
                          HOWARD T. SNYDER
                          UNITED STATES MAGISTRATE JUDGE
```

Copies to:

Counsel of record
     and pro se parties, if any